IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

DEBORAH DAVIS, Individually and as )
Personal Representative of the Estate of )
Barbara Mosley; TOMMY DAVIS; )
GERALD DAVIS; JOEL DAVIS; and )
DALE MOSLEY, )
                                               )
                           Plaintiffs, )
                                               )
v. ) Case No. CIV-18-667-R
                                               )
FEDERAL INSURANCE COMPANY, )
                                               )
                           Defendant. )

## **ORDER**

Before this Court is Defendant Federal Insurance Company's Motion for Summary Judgment (Doc. 18). The matter is fully briefed and at issue. *See* Docs. 18, 21–22. For the reasons stated herein, the Court GRANTS Defendant's Motion.

**I.     Background**

The Court views the factual record and all reasonable inferences drawn from it in the light most favorable to Plaintiff, the non-movant. *See Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019).

This case concerns an Accidental Death and Dismemberment Insurance Policy ("Policy") issued to Barbara Mosley on April 6, 2016, by Defendant, Federal Insurance Company. *See* Doc. 18, at 6; Doc. 21, at 6.[1] Ms. Mosley suffered from leukemia, among

---

[1] The Policy went into effect on May 1, 2016. *See* Doc. 18-1; Doc. 21-3.

other ailments, and she was receiving treatment for this disease at the time of her death. *See* Doc. 18, at 5–7; Doc. 21, at 4–5; *see also* Doc. 18-3. On May 10, 2017, Ms. Mosley fell from her wheelchair; nineteen days later—on May 29, 2017—she passed away. *See* Doc. 18, at 6–7; Doc. 21, at 4, 6.[2] Ms. Mosley's death was investigated by Cheryl Niblo, D.O., from Oklahoma's Office of the Chief Medical Examiner. *See* Doc. 18-3; Doc. 21-2. Dr. Niblo concluded that the "probable cause of death" was sepsis "due to[] [b]acteremia from [an] infected port." *Id*. Within the investigation report, Dr. Niblo listed the following "[o]ther significant conditions contributing to death (but not resulting in the underlying cause given)": "Acute myelogenous leukemia," "Acute on chronic right subdural hematoma," "Hypertensive cardiovascular disease," and "Diabetes mellitus." *Id*. Dr. Niblo also certified Ms. Mosley's Certificate of Death, which lists "Sepsis" as the "Immediate Cause" of death and "bacteremia from infected port" as the condition "leading to the cause." Doc. 18-2; Doc. 21-1. On both the Certificate of Death and investigation report, the "manner of death" is listed as "Accident." Docs. 18-2, 18-3, 21-1, 21-2.

On January 16, 2018, Defendant denied coverage for Ms. Mosley's death in a letter addressed to Ms. Mosley's daughter, Deborah Davis. Doc. 18, at 8. The letter stated, in part:

> We [Defendant] have reviewed all of the information you [Ms. Davis] provided and the coverage available under the above referenced policy. Based on our review of the received claim documentation, we must regretfully decline to pay for your loss. Our reasons for this declination of coverage are explained below, followed by pertinent provisions of the policy.

---

[2] The death certificate states that Ms. Mosley fell on May 12, 2017. *See* Doc. 21-1; *see also* Doc. 21-2, at 1 (medical examiner's investigation report identifying date of illness or injury as May 12, 2017). According to the parties, however, Ms. Mosley's fall occurred on May 10, 2017. *See* Doc. 18, at 7; Doc. 21, at 6.

> In order to recover for an Accidental Death Benefit under this Policy, we must be able to demonstrate that an Accident occurred which resulted in a loss, and that loss must not be otherwise excluded under the Policy.
>
> Per the received medical records from St. John Medical Center, Ms. Mosley was admitted on May 10, 2017 due to a fall where she suffered a forehead contusion and right knee contusion. A CT scan of her brain was clear and she was discharged the next day, May 11, 2017. The medical records further revealed Ms. Mosley's sepsis was caused by the infected port related to her ongoing treatment with chemotherapy. The Medical Examiner report and Death Certificate confirmed Ms. Mosley's cause of death was sepsis due to bacteremia from infected port.
>
> We have been unable to verify that an accident or accidental bodily injury directly resulted in Ms. Mosley's demise and the Disease or Illness exclusion would apply. It is for the above referenced reasons, we must respectfully deny your claim.

Doc. 18-6, at 2 (emphasis omitted).

At issue is whether the Policy covers Ms. Mosley's death. Under "Accidental Loss of Life and Dismemberment Benefit," the Policy states: "If an Accidental Bodily Injury causes the Covered Person's Loss of Life . . . [Defendant] will pay the applicable percentage of the Loss of Life Benefit Amount shown in the Declarations." Doc. 18-1, at 9; Doc. 21-3, at 8 (emphasis omitted).[3] The Policy defines "Accidental Bodily Injury" as a "bodily injury" that (1) is "Accidental," (2) is "the direct cause of a loss," and (3) "occurs while a Covered Person is insured" under the Policy. Doc. 21-3, at 11 (emphasis omitted).[4] The Policy also defines "Accident"/"Accidental" as "a sudden, unforeseen, and unexpected event which happens by chance, is independent of illness, disease or other bodily

---

[3] Defined terms in the Policy are bolded. The Court has omitted this bolding and parenthetically noted the omission.
[4] The Policy's definition of "Loss" includes, among other things, "Accidental . . . Loss of Life." Doc. 21-3, at 12 (emphasis omitted); *see also id*. at 13 ("Loss of Life means death . . . ." (emphasis omitted)).

3

malfunction and is the direct cause of loss." *Id*. at 17 (emphasis omitted). Neither "direct cause" nor "bodily injury" are defined in the Policy.

The Policy also includes an exclusion concerning diseases and illnesses, which reads in full:

> This insurance does not apply to any Accident, Accidental Bodily Injury or loss caused by or resulting from, directly or indirectly, a Covered Person's emotional trauma, mental or physical illness, disease, normal pregnancy, childbirth or miscarriage, bacterial or viral infection, bodily malfunctions, or medical, surgical or diagnostic treatment thereof.
>
> This exclusion does not apply to loss resulting from the Covered Person's Accidental bacterial infection or from consumption of a substance contaminated by bacteria.

*Id*. at 10 (emphasis omitted). Defendant maintains that this exclusion applies to Ms. Mosley's death, while Plaintiffs disagree. *Compare* Doc. 18, at 16–17 *with* Doc. 21, at 12–15.

## II. <u>**Motion for Summary Judgment Standard**</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. . . . An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Id*. at 670–71 (citing *Celotex Corp. v. Catrett*,

4

477 U.S. 317, 323 (1986)). "If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id*. at 671 (citing Fed. R. Civ. P. 56(e)). In short, the Court must inquire "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–52.

While the Court construes all facts and reasonable inferences in the light most favorable to the non-moving party, *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 712–13 (10th Cir. 2014), "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Liberty Lobby*, 477 U.S. at 252. At the summary judgment stage, the Court's role is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.

## III. <u>Discussion</u>

The Court applies Oklahoma substantive law to this dispute. *See Evanston Ins. Co. v. Law Office of Michael P. Medved, P.C.*, 890 F.3d 1195, 1198 (10th Cir. 2018); *see also State Farm Fire & Cas. Co. v. Pettigrew*, 180 F. Supp. 3d 925, 931 (N.D. Okla. 2016) ("The interpretation of an insurance contract is governed by state law and, sitting in diversity, we look to the law of the forum state." (internal quotation marks and citation omitted)). Under Oklahoma law,

> [a]n insurance policy is a contract. The rules of construction and analysis applicable to contracts govern equally insurance policies. The primary goal of contract interpretation is to determine and give effect to the intention of the parties at the time the contract was made. In arriving at the parties' intent, the terms of the instrument are to be given their plain and ordinary meaning. Where the language of a contract is clear and unambiguous on its face, that which stands expressed within its four corners must be given effect. A contract should receive a construction that makes it reasonable, lawful, definite and capable of being carried into effect if it can be done without violating the intent of the parties.

*May v. Mid-Century Ins. Co.*, 2006 OK 100, ¶ 22, 151 P.3d 132, 140. Where the insurance policy is ambiguous, however, it is strictly construed against the insurer and in favor of the insured because insurance policies are contracts of adhesion. *Spears v. Shelter Mut. Ins. Co.*, 2003 OK 66, ¶ 5, 73 P.3d 865, 868.[5]

Plaintiffs argue that Ms. Mosley's death is covered by the Policy. *See generally* Doc. 21. Specifically, Plaintiffs assert that Ms. Mosley's fall on May 10, 2017, is somehow related to the agreed-upon cause of her death: sepsis stemming from a bacterial infection

---

[5] The Court has noted that

> [t]he determination of whether a contract is ambiguous is made only after applying the pertinent rules of construction. Oklahoma's statutory rules of construction establish that: the language of a contract governs its interpretation, if the language is clear and explicit and does not involve an absurdity (Okla.Stat.tit.15, §§ 154, 155); a contract is to be taken as a whole, giving effect to every part if reasonably practicable, each clause helping to interpret the others (*id.* § 157); a contract must receive such an interpretation as will make it operative, definite, reasonable, and capable of being carried into effect (*id.* § 159); words of a contract are to be given their ordinary and popular meaning (*id.* § 160); and a contract may be explained by reference to the circumstances under which it was made and the matter to which it relates (*id.* § 163). The mere fact the parties disagree or press for a different construction does not make an agreement ambiguous. A contract is ambiguous if it is reasonably susceptible to at least two different constructions. The test for ambiguity is whether the language is susceptible to two interpretations on its face . . . from the standpoint of a reasonably prudent lay person, not from that of a lawyer.

*Morrison v. Stonebridge Life Ins. Co.*, No. CIV-11-1204-D, 2015 WL 137261, at *4 (W.D. Okla. Jan. 9, 2015) (ellipsis original) (internal quotation marks and citations omitted).

in Ms. Mosley's port. *See* Doc. 21, at 4 ("But for the accidental fall that caused the fatal infection and resulting sepsis, [Ms. Mosley] undoubtedly would have lived longer."). But even assuming the fall qualifies as an "Accidental Bodily Injury" under the Policy's terms, Plaintiffs fail to connect the fall to the agreed-upon cause of death.

To support an alleged causal nexus between the fall and the sepsis, Plaintiffs point to three exhibits attached to their response: the death certificate, the state medical examiner's investigation report, and an affidavit from Deborah Davis, Ms. Mosley's daughter. The death certificate and investigation report are both certified by Dr. Niblo—who the parties agree is the only qualified medical expert in this case. *See* Doc. 18, at 12 ("Because no qualified medical expert (other than the medical examiner) evaluated Mosley upon her death and can testify on behalf of Plaintiffs regarding the specific cause of her death, Plaintiffs can present no admissible evidence to show that Mosley's death is covered under the Policy."); Doc. 21, at 5 ("[Defendant] admits that the State Medical Examiner is the only expert who can testify as to causation. Plaintiffs agree!"). The death certificate lists "sepsis" as the "immediate cause (final disease or condition resulting in death)"[6] of Ms. Mosley's death, while the investigation report lists sepsis as the "probable cause" of her death. Doc. 21-1; Doc. 21-2, at 1.[7] The death certificate lists "bacteremia from infected port" as a "condition[] . . . leading to" sepsis, while the investigation report states that the fatal sepsis was "due to bacteremia from infected port." *Id*. The death certificate also

---

[6] This "immediate cause" of death appears in a section of the death certificate for information on the "Cause of Death," which is further defined as the "chain of events—diseases, injuries or complications—that directly caused the death." Doc. 21-1.

[7] The Court omits certain capitalizations and underlining from the death certificate and investigation report for ease of reading.

7

includes a line for an "underlying cause (disease or injury that initiated the events resulting in death)"—but this line is blank. Doc. 21-1.

Both the certificate and the report include space for "significant conditions" that contributed to death but did not result in the underlying cause of death, and in these sections "acute on chronic right subdural hematoma" is listed. Doc. 21-1; Doc. 21-2, at 1. The investigation report links this hematoma with Ms. Mosley's fall. *See* Doc. 21-2, at 1 (listing "acute on chronic right subdural hematoma status post fall" under "significant observations"). The death certificate also includes details about Ms. Mosley's fall in a section for information about injuries, but the fall is not connected to any causation information above. *See* Doc. 21-1 (noting that Ms. Mosley suffered an injury from a fall). Finally, both the death certificate and the investigation report list Ms. Mosley's "manner of death" as "accident." Doc. 21-1; Doc. 21-2, at 1.

Most salient to Plaintiffs' argument is the *absence* of any information on the death certificate and investigation report connecting Ms. Mosley's May 10th fall to her death. Again, the parties agree on the cause of Ms. Mosley's death—sepsis brought about by an infected port. How the fall is relevant to the cause of death or the death itself, however, is unaddressed by these documents.[8] In fact, the only "evidence" of a causal nexus between

---

[8] Plaintiffs, in their brief, assert that "Dr. Niblo indicated Ms. Mosley's fall as the injury that initiated events resulting in death." Doc. 21, at 11. Plaintiffs cite no source for this assertion, though presumably they are relying on the death certificate and investigation report. But these documents evince no causal nexus between the fall and the cause of Ms. Mosley's death. The only relationship they establish between the fall and the cause is that Ms. Mosley's right subdural hematoma—which the investigation report links to her fall—was one of several "significant conditions contributing to death but not resulting in the underlying cause." *See* Docs. 21-1–21-2. The Policy demands that the Accidental Bodily Injury cause the injury. *See* Doc. 21-3. That Ms. Mosley's injuries from the fall may have been a contributing condition is insufficient to trigger coverage, especially when the death certificate and investigation report clearly identify sepsis as

8

the fall and Ms. Mosley's death that Plaintiffs offer is an affidavit from Ms. Mosley's daughter, Deborah Davis, in which Ms. Davis avers that Ms. Mosley's port was uninfected prior to her fall on May 10, 2017, and that—"[b]ased on [Ms. Davis's] observations and beliefs"—Ms. Mosley's death resulted from her "accidental fall." Doc. 21-4, at 1–3.

Ms. Davis's affidavit is problematic for myriad reasons. First, "[a]n affidavit . . . used to . . oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Under the personal knowledge standard, an affidavit is inadmissible if the witness could not have actually perceived or observed that which [s]he testifies to." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006) (internal quotation marks and citations omitted). "[A]t the summary judgment stage, statements of mere belief in an affidavit must be disregarded." *Id*. (internal quotation marks and citation omitted). While some of Ms. Davis's assertions in the affidavit are based on her observations, several are, at least in part, premised on her beliefs. *See* Doc. 21-4. Thus, parts of the affidavit are likely inadmissible.

More significantly, Plaintiffs give no indication that Ms. Davis is qualified to make judgments about Ms. Mosley's health or the cause of Ms. Mosley's death. Ms. Davis is not included on the Plaintiffs' Expert Witness List, *see* Doc. 23, and Plaintiffs nowhere claim that Ms. Davis is a doctor or medical expert. The Tenth Circuit has held that expert medical

---

what caused Ms. Mosley's death. *See Minyen v. Am. Home Assurance Co.*, 443 F.2d 788, 790 (10th Cir. 1971) ("The law of Oklahoma is well settled that an insurance contract alone is the measure of liability."); *see also infra* note 11.

9

testimony is required to prove causation in the context of accidental death policy coverage disputes. *See Bearman v. Prudential Ins. Co. of Am.*, 186 F.2d 662, 665 (10th Cir. 1951) ("Whether there was causal connection between the accident and resulting injury and [the cause of death] presented a question for solution not within the competency of laymen, and a question with respect to which, only a medical expert with training, skill, and experience could form a considered judgment and express an intelligent opinion."); *accord Cochenour v. Smart*, 1951 OK 339, ¶ 11, 240 P.2d 91, 94 ("[W]here an injury is of such character as to require skilled and professional men to determine the cause thereof, the question is one of science and must be proved by their testimony."). Ms. Davis, then, cannot opine on matters of causation regarding Ms. Mosley's death, as she is no more than a lay witness. *See Randolph v. Collectramatic, Inc.*, 590 F.2d 844, 848 (10th Cir. 1979) ("[W]here the [t]opic requires special experience, only the testimony of a person of that special experience will be received."); *see also James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1214 (10th Cir. 2011) ("[Federal Rule of Evidence] 701 does not permit a lay witness to express an opinion as to matters which are beyond the realm of common experience and which require the special skill and knowledge of an expert witness."). Thus, the Court declines to consider this affidavit on summary judgment.

Plaintiffs cannot establish that Ms. Mosley's fall "caused" her death by citing the death certificate, investigation report, or (disregarded) affidavit. And by the terms of the Policy, an Accidental Bodily Injury must have caused the insured's loss for benefits to be paid. Thus, having failed to link up the fall with any of the events or illnesses that the

parties agree caused Ms. Mosley's death, Plaintiffs cannot rely on the fall to find coverage under the Policy.[9]

Beyond singling out Ms. Mosley's fall, Plaintiffs place great weight on the death certificate's and investigation report's classification of Ms. Mosley's manner of death as an "accident." *See* Doc. 21, at 9–15. But Plaintiffs fail to show how this manner of death designation is relevant to the issue of coverage. First, the Policy explicitly calls for an accidental bodily injury to be the *cause*, not the *manner*, of the insured's death, *See* Doc. 21-3, at 8; *see also supra* note 8 (noting that, under Oklahoma law, the insurance policy is the sole measure of liability). Plaintiffs acknowledge that these terms have different meanings. *See* Doc. 21, at 9. Second, courts have held that such manner-of-death determinations are not dispositive in the context of policies that define "accident." *See,*

---

[9] Plaintiffs' reliance on *John Hancock Mut. Life Ins. Co. v. Highley*, 1968 OK 117, 445 P.2d 241, is unavailing. In *Highley*, the insured-decedent died ten days after he was hospitalized for injuries sustained during a head-on automobile collision. *Highley*, 1968 OK 117, ¶ 4, 445 P.2d at 243. The death certificate indicated that the immediate cause of the insured's death was mitral valvular heart disease, which the insured had suffered from for years prior to the collision. *See id.* ¶¶ 4, 8, 445 P.2d at 243–44. Critically, the certificate also listed, as the "underlying cause," the insured's automobile accident, which contributed to the insured's death by aggravating the insured's pre-existing heart condition. *Id.* ¶ 8, 445 P.2d at 244–45. The plaintiffs' expert at trial testified, somewhat dissimilarly, that the insured had died from a massive brain hemorrhage brought about by treatment for the injuries he had sustained in the automobile accident. *Id.* ¶¶ 14–15, 445 P.2d at 245–46. Plaintiffs argue that the facts here are analogous to those in *Highley*, *see* Doc. 21, at 10–11, but the Court fails to see the similarities. In *Highley,* the defendant conceded that plaintiffs' expert's testimony "would support the necessary finding by the jury that the insured's death was caused directly, independently and exclusively of all other causes, by a bodily injury sustained solely by external, violent, and accidental means," as the insurance policy's terms required. *Id.* ¶ 16, 445 P.2d at 246. Defendant does not make a similar concession here; indeed, Defendant argues that Plaintiffs lack any evidence establishing that Ms. Mosley's fall caused her death or led to the agreed-upon cause of her death. Plaintiffs deploy *Highley* to argue that the bacterial infection of Ms. Mosley's port stemmed from her fall, in the same way that the injuries suffered by the insured in *Highley* stemmed from his car accident. *See* Doc. 21, at 11. But in *Highley* the plaintiffs submitted evidence of this causal nexus between the "accident" and the cause of the insured's death—specifically, the death certificate and expert testimony. Here, Plaintiffs lack evidence to establish a causal nexus between Ms. Mosley's fall and the bacterial infection that led to the fatal sepsis. It is precisely this lack of evidence that renders *Highley* inapposite.

*e.g., Schmidt v. Metro. Life Ins. Co.*, No. 08-0726-CV-W-FJG, 2009 WL 2982918, at *6 (W.D. Mo. Sept. 14, 2009) ("The precedent cited by defendant is clear that the medical examiner's determination as to whether the death was an accident is not determinative because it does not take into account the language in the . . . plans at issue. . . . Thus, the Court will not presume that the decedent's manner of death was an accident just because of the finding on the medical examiner's report."); *Pedersen v. Union Labor Life Ins. Co.*, No. 06-C-75, 2006 WL 3474183, at *6 (E.D. Wis. Nov. 29, 2006) ("[A] medical examiner's determination that death is accidental is not dispositive for purposes of determining whether the death was an 'accident' under the plan."); *Clark v. Metro. Life Ins. Co.*, 369 F. Supp. 2d 770, 776 (E.D. Va. 2005) ("[N]either the dictionary definition nor the cause of death as certified by the Medical Examiner determine whether the death was an 'accident' for purposes of the Plan."); *Mullaney v. Aetna U.S. Healthcare*, 103 F. Supp. 2d 486, 491 (D.R.I. 2000) ("[T]he medical examiners [sic] determination of 'accident' does not mean that [insured's] 'accident' was of the sort contemplated by defendant or described in the Plan.").[10] Third, this manner-of-death designation is likely inadmissible hearsay. *Travelers Protective Ass'n of Am. v. Mansell*, 1975 OK 124, ¶ 8, 540 P.2d 1178, 1180 ("[T]he trial court reversibly erred in allowing the Death Certificate into evidence because it contained 'hearsay' in the certifying physician's conclusions that the carbon monoxide asphyxia was due to an 'accident.'"); *cf. Minyen v. Am. Home Assurance*

---

[10] In the cases cited, the courts applied the Employee Retirement Income Security Act ("ERISA") to the disputes. However, these cases are persuasive, as their facts and governing legal standards are sufficiently analogous to those at issue here.

12

*Co.*, 443 F.2d 788, 791 (10th Cir. 1971) (citing *Fed. Life Ins. Co. v. Maples*, 1951 OK 45, 228 P.2d 363) (noting Oklahoma's distinction between "an examining physician's statement on a death certificate that the death was homicide or suicide," which is inadmissible, and a statement "that a certain kind of disease or injury caused death," which is admissible). Thus, the Court would be justified in disregarding Ms. Mosley's manner-of-death designation, as only admissible evidence may be considered on summary judgment. *See Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995).

But even if the Court considered the medical examiner's determination that Ms. Mosley's manner of death was an accident, Plaintiffs fail to satisfy the Policy's definition of "accidental" vis-à-vis "Accidental Bodily Injury." To be covered under the Policy, the insured's death must be directly caused by an "Accidental Bodily Injury." Doc. 21-3, at 8, 11. In addition to direct causation, "Accidental" requires "a sudden, unforeseen, and unexpected event" that is "independent of illness, disease[,] or other bodily malfunction." *Id*. at 17. The uncontested cause of Ms. Mosley's death—sepsis stemming from a bacterial infection—plainly shows that her death was not independent of an illness, disease, or bodily malfunction. *See* Docs. 21-1–21-2.[11] Even beyond the sepsis, Plaintiffs

---

[11] The Policy's "independent of" language also poses problems for Plaintiffs' causation argument. *See supra* pp. 7–11. Ms. Mosley's injuries from her fall—specifically, an "[a]cute on chronic right subdural hematoma"—are listed on the death certificate and investigation report as "significant conditions contributing to death," but not "resulting in the underlying cause." *See* Doc. 21-1; Doc. 21-2, at 1. But the hematoma is not the only "significant condition" listed in these documents; rather, the documents also list "leukemia," "cardiovascular disease," and "diabetes" as significant conditions. *See id*; *see also supra* Section I. Even if the Court were to treat these significant conditions as "causing" (in the broadest sense) Ms. Mosley's death, Plaintiffs would still fail to show entitlement to coverage under the Policy because Ms. Mosley's death would not satisfy the Policy's definition of "Accident" or "Accidental." To be an "Accident" under the Policy, the event must be, among other things, "independent of illness, disease or other bodily malfunction." Doc. 21-3, at 17. To say that Ms. Mosley's death was caused by fall-induced injuries *and* leukemia, cardiovascular disease, and/or diabetes is to say that her death was *not* accidental, as

acknowledge in their brief that Ms. Mosley, who was fighting cancer, likely died because of the effects of chemotherapy on her body. *See* Doc. 21, at 11 ("Ms. Mosley suffered from cancer, which rendered her body too weak to recover from the sepsis and, incidentally, her chemotherapy port provided a convenient route for the infection to take root. *But for the cancer, she likely would have survived the sepsis, and but for the sepsis, she would have lived longer.*" (emphasis added)). "As the part[ies] seeking to recover accidental death benefits under the coverage provisions of an insurance policy, Plaintiff[s] bear[] the burden to prove that the conditions of coverage are satisfied." *Morrison v. Stonebridge Life Ins. Co.*, No. CIV–11–1204–D, 2015 WL 137261, at *5 (W.D. Okla. Jan. 9, 2015) (citing Oklahoma law). Citing the manner-of-death designation does not satisfy this burden, especially in light of the disease- and illness-related complications from which Ms. Mosley was suffering.

## IV. Conclusion

Plaintiffs have failed to show that Ms. Mosley's death qualified as a covered loss under the Policy's terms. Thus, Defendant's denial of Plaintiffs' insurance claim did not breach the Policy, and Defendant is entitled to summary judgment on Plaintiffs' breach of

---

the Policy defines it. This would also be in line with cases examining Oklahoma law's treatment of accidental death policies that require an insured's death be directly caused by an accidental bodily injury that is independent of all other causes. *See Morrison*, 2015 WL 137261, at *6 ("[R]elying on Oklahoma case law, the Tenth Circuit has distilled a general rule that is applicable here: if 'death resulted because the accident aggravated the effects of the disease, or the disease aggravated the effects of the accident, *with both the disease and the accident acting [as] concurring causes of death*,' there is no coverage under a policy that provides benefits for a death that occurs as a direct result of an injury caused by an accident, independent of all other causes." (emphasis added) (quoting *Flores v. Monumental Life Ins. Co.*, 620 F.3d 1248, 1252 (10th Cir. 2010))).

14

contract claim.[12] As Plaintiffs cannot establish breach of the insurance contract, Defendant is also entitled to summary judgment on Plaintiffs' bad faith tort claim. *See Stonebridge*, 2015 WL 137261, at *7 (citing *Davis v. GHS Health Maint. Org., Inc.*, 2001 OK 3, ¶ 16, 22 P.3d 1204, 1210) ("Because Plaintiff[s] ha[ve] failed to establish a breach of contract, [they] also cannot prevail on [their] bad faith claim as a matter of law.") (citing Oklahoma law); *see also Gillogly v. Gen. Elec. Capital Assurance Co.*, 430 F.3d 1284, 1293 (10th Cir. 2005) (noting that plaintiffs must establish breach of an enforceable contract to invoke the theory of bad faith). And, as Plaintiffs lack actionable claims, the parties' dispute over maximum recovery amounts under the Policy is rendered moot. *See* Doc. 18, at 13–14; Doc. 21, at 12–13.

Accordingly, Defendant's summary judgment motion is GRANTED.

IT IS SO ORDERED this 8th day of April, 2019.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE

---

[12] As the Court finds no coverage under the Policy, it need not consider whether the Policy's exclusionary provisions would apply to Ms. Mosley's death. *See* Doc. 18, at 16–17 (arguing that the Policy's Disease or Illness exclusion applies to Ms. Mosley's death). Defendant concedes that it bears the burden of showing that this exclusion applies. *Id*. at 11 n.1 (citing *State Farm Mut. Auto Ins. Co. v. Vokoun*, No. CIV-08-187, 2008 WL 4377437, at *2 (E.D. Okla. Sept. 25, 2008)); *see also Pitman v. Blue Cross & Blue Shield of Okla.*, 217 F.3d 1291, 1298 (10th Cir. 2000) ("A basic rule of insurance law provides that the insured has the burden of showing that a covered loss has occurred, while the insurer has the burden of showing that a loss falls within an exclusionary clause of the policy."). Given Plaintiffs' argument on this issue, and the scant attention Defendant pays to it in its reply brief, the Court is doubtful Defendant has established that the exclusion applies—but the Court does not resolve this question because it finds that Ms. Mosley's death is not a covered loss.